KEN McCARTNEY, Bar No. 5-1335
The Law Offices of Ken McCartney, P.C.
Post Office Box 1364
Cheyenne, WY 82003
Tel (307) 635-0555
Email: bnkrpcyrep@aol.com

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| CHRISTOPHER GREGG THOMAS; CONNOR JAMES GLYNN; STEPHEN THOMAS AARON; KYLE CHARLES OSBORNE;<br><br>Movants<br><br>RANDY ROYAL CHAPER 7 TRUSTEE for PROSPECT AGENCY GROUP, INC.<br><br>Debtor<br><br>FOREMOST INSURANCE COMPANY OF AMERICA (FCOA, LLC); PROGRESSIVE INSURANCE,<br><br>Respondents | Case No.: 18-20180<br><br>OBJECTION OF CLIFTON BO CLEVELAND ABBOTT, CLIFTON CLEVELAND ABBOTT, W. SCOTT ABBOTT, AND JILL ABBOTT TO MOTION TO ABANDON PROPERTY |

_____

Creditors Clifton Bo Cleveland Abbott (Bo Abbott), Clifton Cleveland Abbott, W. Scott Abbott, and Jill Abbott (the Abbotts), through counsel, object to the Motion to

Abandon Property (Motion) [Doc.15], filed on June 12, 2018[1] by movants Christopher Gregg Thomas, Connor James Glynn, Stephen Thomas Aaron, and Kyle Charles Osborne (Movants):

## INTRODUCTION

Debtor Prospect Agency Group, Inc. (Prospect), an insurance agency, commenced this proceeding on March 23, 2018. Its Petition [Doc. 1] listed almost $2,000,000 in assets (*id,* p. 6).  While most of these claims are asserted against the Abbotts themselves (and disputed by the Abbotts), they also include over $249,000 in receivables (*id.*, p. 8), The Petition also lists over $900,000 in unsecured liabilities (*id.*, pp. 14-19) including a debt of over $225,000 to Prospect's CEO and controlling shareholder, Christopher Gregg Thomas (*id.*, p. 16). Now, Mr. Thomas and three other employees of Prospect ask this Court to order the trustee to abandon what may well be the Debtor's most valuable disclosed asset, its book of business relating to two insurers. The Motion is, at its heart, part of an attempt to remove assets of the Debtor having an estimated value of $400,000 from the estate while leaving the Debtor's liabilities behind.

---

[1] The Motion was originally filed without a notice of the opportunity to object.  It was later refiled with the notice on June 28, 2018 [Doc. 20]. The certificate of mailing on the notice is dated June 22, 2018. The notice states that objections must be filed "ON OR BEFORE 24 days *before* the date of this notice" (emphasis supplied). Assuming the reference was intended to be to the date 24 days *after* the date of the notice, this objection is due July 16, 2018.

## ARGUMENT

### I. The relief Movants seek is only available as an adversary proceeding.

As a threshold matter, Movants improperly seek abandonment of the book of business by means of a motion, rather than an adversary proceeding.

Rule 7001, Federal Rules of Bankruptcy Procedure, provides:

An adversary proceeding is governed by the rules of this Part VII. The following are adversary proceedings:

\* \* \*

(2) a proceeding to determine the validity, priority, or extent of a lien or other interest in property, but not a proceeding under Rule 3012 or Rule 4003(d);[2]

\* \* \*

The Motion seeks to determine the extent of the Movants interest in the book of business, vis-à-vis the interest of the trustee.

The Movants seek an expedited hearing, and to pursue their desired relief by Motion. If permitted to do so, they would short-circuit the discovery process that, for reasons set forth below, is necessary to fully explore allow the Abbotts to adequately present their position.

### II. The book of business has substantial value to the estate.

---

[2] The cited exceptions are inapplicable here.

3

According to the Motion, Prospect's book of business is its "cumulative value or number of clients held with one or more carriers or agencies." Motion, p. 2, ftn. 1. The Motion seeks abandonment of the books of business held with two insurers, Foremost Insurance Company of America (Foremost), and Progressive Insurance (Progressive).

Bo Abbott maintained the spreadsheet attached as Exhibit 1 based on data from Prospect's management software system for business Prospect actively engaged in in Colorado, Wyoming, Montana, Washington and Oklahoma. Exhibit 1 reflects that as of July 2017, the total of all the annualized premiums paid to all carriers by Prospect's clients in those states was $2,712,695. Mr. Abbott, and possibly an expert witness, will testify that using standard industry valuation methods, Prospect's book of business as reflected in Exhibit 1 could be sold for $400,000. Prospect also had, as of July 2017, what Mr. Abbott estimates to be approximately $2,000,000 in additional business that he was not directly involved in managing, increasing the estimated sale value at that time to nearly $700,000.

The Petition also lists $249,029.60 in receivables. It is entirely unclear whether this amount, or a substantial part of it, represents commissions owed by Progressive or Foremost – or for that matter, any other insurers. Since Prospect is an insurance agency, the Court could reasonably infer that there is such an overlap. The overlap needs to be explored in discovery. In any event, the book of business from Foremost and Progressive can be expected to generate ongoing commissions to Prospect. Had Prospect's business

relationships with these two insurers not had value, Movants would most likely not have filed the Motion.

**III.    The Movants' claim to Prospect's book of business is spurious.**

The Motion seems to conceptualize Prospect's ownership of the book of business as merely one of holding legal title, with Movants having the beneficial interest, analogous to a trust. The notion of a corporate insurance agent holding only legal title to its assets is a novel concept in the insurance industry. And the facts do not support this arrangement: while the Movants claim to be the independent insurance agents who "held title to their books of business under [Prospect]" (Motion, p. 2, first paragraph), Movants neither reference nor produce any document establishing this relationship between Prospect and the Movants. Nor do they reference or produce any documents showing how they came to acquire any interest in the book of business in the first place.

The Motion asserts that the books of business relating to Foremost and Progressive have been transferred to the Movants, referencing Exhibits A and B to the Motion. These exhibits, however, do not support Movants' assertion. They only show that the Movants *requested* the transfer of the accounts.

Of note, the request submitted to Foremost to transfer its business to movant Connor Glynn, Exhibit B to the Motion, suggests that the request was submitted by Prospect's "owner."  Here it is important to distinguish between Prospect and its apparent predecessor, an unincorporated entity called Prospect Agency Group. The unincorporated

5

entity is not listed as an alias in the Petition, although it was listed as an alias of Mr. Thomas personally in his own Chapter 13 bankruptcy filed in Montana. See, Exhibit 2, relevant excerpts from the Petition in that proceeding, p.2, §4. (That bankruptcy was dismissed on March 23, 2018. See, Exhibit 3, order for dismissal.)

Another logical inference that must be explored in discovery is that the unincorporated entity was owned by, or was a d/b/a for, Mr. Thomas personally, and that he contributed all interests in that entity's assets, including its book of business, to the Debtor, Prospect, in consideration for his controlling equity interest Debtor. That the "owner" of the unincorporated entity submitted the request to Foremost without a corporate resolution of Debtor Prospect, and that Movants have not supplied the form of request that would demonstrate that it was in fact sent on behalf of Prospect, supports this inference. Now, he seeks to retroactively recharacterize that transaction.

### IV. The Movants offer no proof that they gave fair consideration for the attempted transfer of the book of business.

If the Movants are unable to show that they gave fair consideration for the transfer of the book of business that they have attempted to effect, the transfer is, at best, a voidable preferential transfer to an insider (in Mr. Thomas's case), or at worst, a fraudulent conveyance to all Movants.

6

As an independent insurance agent, Prospect's book of business actually included accounts with many insurers in addition to Foremost and Progressive. Bo Abbott is prepared to testify, and discovery will reveal, that at least 11 other insurers, as listed in Exhibit 1, should also be included in Prospect's book of business. Sanctioning the abandonment of the Prospect's books of business with Foremost and Progressive will set a precedent that will have far-reaching effects on the volume of the assets in the estate available to satisfy unsecured debts. Prospect, or Mr. Thomas, may also have transferred the book of business with respect to the other insurers, or may be about to. These assets should be available to the trustee through his avoidance powers or his ability to set aside any fraudulent conveyances to Mr. Thomas and the other Movants.

Mr. Thomas's intent and plan to misappropriate assets that are rightfully Prospect's are further evidenced by his candid admission, in a case he has filed against Bo Abbott in a Montana state court, that $40,000 invested in Prospect by Clifton Cleveland Abbott's construction company, Abbott Construction, was deposited in a *personal* account (4554) owned individually by Mr. Thomas (see Exhibit 4, Complaint, p. 3, ¶16), and that another $22,000 invested by Abbott Construction, and $40,000 invested by W. Scott Abbott, was deposited in an account variously described in ¶16 as "owned

7

jointly by [Bo] Abbott and Thomas (2473)," *id.,* and as Thomas's personal account 2473," *id.,* p. 4, ¶18.[3]

### V. The Movants' assertions about their potential personal liability do not represent any actual damages, and are not relevant to the relief they seek.

The Movants' argument, on p. 3, that by virtue of an action on April 11-12, 2018 when "the carriers and trustee reversed and/or stopped the transfer of the books," they became exposed to "a high level of personal liability" because they are unable to obtain, through Prospect, errors and omissions insurance, is to a great extent unintelligible. To the extent it can be understood, this contention should not be a concern for the Court. First, the Movants have not alleged any actual harm they have suffered as a result of the carriers' or trustee's actions. More importantly, as argued above, it is highly likely that the Movants had no right to attempt the transfers in the first place. Now they are merely suffering the consequences of their actions. Had they not attempted to strip assets from Debtor Prospect before the commencement of this case, they would not have faced this problem.

### CONCLUSION

---

[3] Paragraph 18 alleges that Bo Abbott was complicit in depositing Scott Abbott's investment in Thomas's personal account. Bo Abbott denies that he was aware that this was a personal account; he understood this to be a Prospect account.

For the above reasons, Clifton Bo Cleveland Abbott, Clifton Cleveland Abbott, W. Scott Abbott, and Jill Abbott request that the Motion to Abandon Property be denied. Alternatively, they request that any hearing in this matter be scheduled so that they have sufficient time to conduct discovery into matters of the development, ownership, and purported transfers or anticipated transfers of Prospect's book of business.

DONE this 16th day of July, 2018.

Clifton Bo Cleveland Abbott (,Clifton Cleveland Abbott,

W. Scott Abbott, and Jill Abbott
Represented by:
.

/s/ Ken McCartney
KEN McCARTNEY, Bar No. 5-1335
The Law Offices of Ken McCartney, P.C.
Post Office Box 1364
Cheyenne, WY 82003
Tel (307) 635-0555
Email: bnkrpcyrep@aol.com

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 16th day of July, 2018, he caused a true and correct copy of the foregoing **Objection to Abandonment Request** to be served electronically on the following:

Dan Morse
Assistant US Trustee

Steven Winship
Winship and Winship                                                           /s/Ken McCartney

9